# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MCGEE TONY DUCLOS,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>SCOTT KERNAN, Secretary of the California Department of Corrections and Rehabilitation,[1]<br><br>　　　　　　　　　　Respondent. | Case No.: 3:16-cv-02230-H-KSC<br><br>**ORDER:**<br><br>**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS;**<br><br>**(2) ADOPTING REPORT AND RECOMMENDATION; and**<br><br>**(3) DENYING CERTIFICATE OF APPEALABILITY**<br><br>[Doc. Nos. 1, 17, 22.] |

On August 31, 2016, Petitioner McGee Tony Duclos ("Petitioner"), a pro se prisoner

---

[1] Petitioner is currently incarcerated at the Corcoran State Prison in Corcoran, California. California Department of Corrections and Rehabilitation: Inmate Locator, https://inmatelocator.cdcr.ca.gov/Details.aspx?ID=F55976 (last visited Jun. 22, 2018). Martin Biter is the active warden of this facility. California Department of Corrections and Rehabilitation, https://www.cdcr.ca.gov/Facilities_Locator/COR.html (last visited Jun. 22, 2018). However, the Court sua sponte substitutes Scott Kernan, Secretary of the California Department of Corrections and Rehabilitation, as the Respondent in this action.

1

at the Corcoran State Prison in Corcoran, California, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner challenges his convictions for: (1) carjacking, Cal. Penal Code § 215(a); and (2) robbery, Cal. Penal Code § 211. (Id.) On October 12, 2017, the Hon. Karen S. Crawford issued a Report and Recommendation recommending that the Court deny the petition. (Doc. No. 17.) Petitioner filed timely objections to the Report and Recommendation on February 8, 2018, (Doc. No. 22), and Respondent elected not to reply. For the reasons that follow, the Court adopts the Report and Recommendation as supplemented by this Order, and denies the petition.

## Background

### I. Factual History

The California Court of Appeal described the facts relevant to Petitioner's case as follows:

A. The prosecution's evidence

On an evening in March 2013, Katie Preman drove her Jaguar to a shopping mall. After parking her car, Preman popped open the trunk and got out of the car. Preman realized that she had left $10 on the seat of the car, and she reached down and picked up the money.

[Petitioner] approached Preman with a gun[FN2] and told her to put her purse down and to place her keys on the driver's seat. [Petitioner] came within one or two feet of Preman. Preman put her purse on the driver's seat. [Petitioner] took the car keys and the $10 from Preman, told her to back away, and got into her car.

[FN2] Police later determined that the gun was a BB gun. [END FN2]

[Petitioner] backed up the car and the trunk popped open. [Petitioner] stopped the car, got out, and closed the trunk. Preman screamed at [Petitioner] to return her belongings. [Petitioner] pointed the gun at Preman, got back into the car, and sped off. According to Preman, during the encounter, [Petitioner] appeared "very serious and very organized." Inside the Jaguar were Preman's iPhone, her purse, and a pair of diamond earrings.

As [Petitioner] drove off, Preman began screaming for help. A woman heard Preman's screams and called 911. A responding police officer allowed Preman to use his iPhone to track the location of Preman's iPhone. Additional

2

police units responded to the location at which Preman's iPhone had been detected. At that location the officers saw a car matching the description of Preman's Jaguar.

A short time later, a police officer saw [Petitioner] walking away from the Jaguar. The officer stopped [Petitioner] at gunpoint. [Petitioner] dropped the iPhone and car key and put his hands in the air. An officer recovered a BB gun from [Petitioner]'s waistband. Preman later identified [Petitioner] at a curbside lineup.

Police transported [Petitioner] to the police station. Once there, police searched [Petitioner] and found cash, earrings, and Preman's credit cards and identification. Police also searched [Petitioner]'s cell phone and discovered a photograph of the BB gun that officers had found in [Petitioner]'s waistband.

San Diego Police Detective John Smith interrogated [Petitioner]. [Petitioner] acknowledged having taken Preman's car, and provided several details concerning the incident. For example, [Petitioner] stated that he obtained the BB gun from his brother's room and had taken a bus to the mall. According to Smith, [Petitioner] also stated that he saw "the blonde lady in the car, with her purse open, counting money, and he decided to take her car and money." Smith stated that [Petitioner]'s answers were responsive and "made perfect sense."

B. The defense

[Petitioner] presented evidence that he committed the acts comprising the offenses while in a dissociative fugue state. (Internal citation omitted.) According to a defense expert, a person suffering from a fugue state may commit acts that appear to be purposeful without actually being conscious.

C. Rebuttal evidence

Three women testified that [Petitioner] had robbed each of them during three separate robberies in 2006. In addition, Francisco Ramirez, a former San Diego police officer, testified concerning [Petitioner]'s commission of a robbery in 2003. According to Ramirez, during a police interview, [Petitioner] initially denied committing the robbery, but subsequently admitting having robbed the victim after Ramirez told [Petitioner] that witnesses had identified him.

People v. Duclos, No. D065591, 2015 WL 5176814, at *1-2 (Cal. Ct. App. Sept. 4, 2015) (formatting altered). These facts are presumed correct absent clear and convincing

3

3:16-cv-02230-H-KSC

evidence to the contrary. 28 U.S.C. § 2254(e)(1). Petitioner has not argued that the Court of Appeal committed any factual errors.

## II. Procedural History

On January 31, 2014 a jury convicted Petitioner for carjacking and robbery in violation of California Penal Code §§ 215(a) and 211, respectively. (Doc. No. 9-1, Lodgment No. 1-2 at CT 1-2.) The jury also returned a true finding on allegations that Petitioner used a deadly weapon during the commission of both offenses within the meaning of California Penal Code § 12022(b)(1), and had previous felony convictions. (Id.) The San Diego County Superior Court sentenced Petitioner to thirty-six years to life in prison. (Doc. No. 9-12, Lodgment No. 5 at 2.)

Petitioner appealed his conviction to the California Court of Appeal for the Fourth District, arguing the following: (1) the trial court abused its discretion in excluding evidence pursuant to California Evidence Code § 352; (2) the trial court's exclusion of this evidence violated his constitutional rights to due process and to present a defense; (3) the trial court erred in instructing the jury on Petitioner's unconsciousness defense by unconstitutionally lowering the prosecution's burden of proof; (4) the trial court erred in not excluding an incriminating photo uncovered in a warrantless search; and (5) the cumulative effect of these errors necessitated reversal. (Id. at 2-3.) The Court of Appeal affirmed the trial court's judgment in a reasoned opinion, rejecting Petitioner's claims. (Id. at 3.)

On September 30, 2015 Petitioner filed a petition for review in the California Supreme Court. (Doc. No. 9-13, Lodgment No. 6 at PageID.1908.) Petitioner claimed the following: (1) the trial court abused its discretion and unevenly applied California Evidence Code § 352; (2) the trial court's uneven application of § 352 violated due process and his right to present a defense; (3) the trial court's jury instruction on consciousness was contrary to United States Supreme Court precedent; and (4) the cumulative effect of these errors required reversal. (Id. at 16, 26, 39.) On November 24, 2015 the California Supreme Court summarily denied the petition for review. (Doc. No. 9-14, Lodgment No. 7.)

On August 31, 2016, Petitioner filed a federal petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. (Doc. No. 1.) On October 12, 2017 the Magistrate Judge issued a Report and Recommendation recommending the Court deny the petition. (Doc. No. 17.) On February 8, 2018, Petitioner filed timely objections to the Report and Recommendation. (Doc. No. 22.)

## III. Standard of Review

Petitioner's claims are governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, federal district court may grant a writ of habeas corpus to a state prisoner only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); accord Swarthout v. Cooke, 562 U.S. 216, 219 (2011) ("[F]ederal habeas corpus relief does not lie for errors of state law." (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)) (internal quotation marks omitted)).

Accordingly, "[a]n application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Review under § 2254(d)(1) is "difficult to meet," Harrington v. Richter, 562 U.S. 86, 102 (2011), and "limited to the record that was before the state court that adjudicated the claim on the merits," Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

The Supreme Court has explained that "§ 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning." Bell v. Cone, 535 U.S. 685, 694 (2002); see Williams v. Taylor, 529 U.S. 362, 404-05 (2000) (distinguishing the "contrary to" and the "unreasonable application" standards). A state-court ruling is "contrary to" clearly established Federal law if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Williams, 523 U.S. at 412-13. Moreover, a state-court ruling constitutes an "unreasonable application"

of clearly established Federal law when it applies the correct principle articulated by Supreme Court precedent to the facts of a petitioner's case in an unreasonable manner. Id. at 413. "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Lockyer v. Andrade, 538 U.S. 63, 71 (2003); see also Parker v. Matthews, 567 U.S. 37, 48 (2012) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

In order for a federal court to grant a writ of habeas corpus pursuant to the "unreasonable application" prong, "the state court's decision must have been more than incorrect or erroneous." Wiggins v. Smith, 539 U.S. 510, 520 (2003). Instead, the state court's application of the relevant precedent must have been objectively unreasonable. Id.; Lockyer, 538 U.S. at 76; see also Harrington, 562 U.S. at 100 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.").

In determining whether to defer to a state court's denial of a habeas petitioner's claims, the Court reviews the reasoning of the last state court to have denied the claims on the merits. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). In this case, the California Supreme Court denied Petitioner's claims without explanation. (Doc. No. 9-14, Lodgment No. 7.) The Court must thus "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "then presume that the unexplained decision adopted the same reasoning." Wilson, 138 S. Ct. at 1192. The Court therefore focuses its attention on the California Court of Appeals' denial of Petitioner's direct appeal. (Doc. No. 9-12, Lodgment No. 5.)

## Discussion

### I. Merits Analysis

#### A. Claims One and Two: Abuse of Discretion and Due Process

##### 1. Background for Claims One and Two

After an extensive motion in limine hearing, the trial court permitted two expert

witnesses to testify that Petitioner "exhibited symptoms of a dissociative fugue state." (Doc. No. 9-12, Lodgment No. 5 at 12.) These experts were also permitted to testify to Petitioner's medical history of seizures to support the conclusion he was in a fugue state while committing the charged offenses. (Id. at 12-13.) Petitioner's family members were allowed to testify to corroborate Petitioner's history of seizures and explain "they had observed him engage in purposeful activity and afterwards [express] that he had no memory of it." (Id.) Moreover, Petitioner himself was permitted to testify he did not remember committing the charged crimes and "suffered from episodes of amnesia his entire life." (Id. at 13.) To impeach Petitioner's testimony and rebut his unconsciousness defense, the prosecution moved to admit evidence of Petitioner's seven prior convictions. (Doc. 1 at 49.) Over the objections of Petitioner's counsel, the trial court admitted all the impeachment and rebuttal evidence requested by the prosecution. (Id. at 50.)

However, pursuant to California Evidence Code § 352,[2] the trial court excluded testimony by Petitioner's witnesses or experts regarding "all the evidentiary details that support" Petitioner's diagnosis. (Doc. No. 9-12, Lodgment 5 at 13.) This exclusion included a video "taken while [Petitioner] was in jail in which he appears to having a seizure," while "'covered with blood' and 'disoriented'" and testimony from witnesses of the incident. (Id. at 8, 13.) The trial court concluded this evidence and testimony would be "unduly time consuming, unduly prejudicial, [too sympathetic]" and "confusing." (Id. at 13.) The California Court of Appeal upheld this decision because the additional testimony and video evidence was duplicative and primarily depicted Petitioner in a state in which he "appeared not to be acting purposefully." (Id. at 15-16.) Thus, the California Court of Appeal concluded that the evidence had, "at best, marginally probative" value to Petitioner's defense that he committed seemingly purposeful criminal acts while in a fugue

---

[2] California Evidence Code § 352 provides the following: "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

7

state. (Id. at 15.)

### 2. Claim One: Abuse of Discretion

In his first claim for relief, Petitioner alleges that the trial court abused its discretion by excluding evidence critical to his unconsciousness defense, but subsequently admitting all of the evidence the prosecution requested to rebut Petitioner's defense. (Doc. No. 1 at 40.)

"[F]ederal habeas corpus relief does not lie for errors of state law." Swarthout, 562 U.S. at 219 (quoting Estelle, 502 U.S. at 67 (internal quotation marks omitted)). "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam). Therefore, a petitioner is not entitled to habeas relief based on a claim that the trial court violated a state evidentiary rule. See Estelle, 502 U.S. at 67; see also Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991) ("[F]ailure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief.").

Accordingly, Petitioner's claim that the trial court abused its discretion in excluding certain testimony is not cognizable, and is denied.

### 3. Claim Two: Arbitrary Application of State Law and Violation Right to Present Defense

In his second claim for relief, Petitioner alleges the trial court's arbitrary and uneven exclusion of evidence violated his rights to due process and to present a complete defense under the Fifth, Sixth, and Fourteenth Amendments. (Doc. No. 1, at 64.)

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)). "[C]learly established Supreme Court precedent" provides that "a state rule or ruling may not arbitrarily deprive a defendant of his right to present a defense." Gray v. Klauser, 282 F.3d 633, 644 (9th Cir. 2004), vacated on other grounds 537 U.S. 1041 (2002), on remand 86 Fed. Appx. 279 (9th Cir. 2004); see, e.g., Rock v. Arkansas, 483 U.S. 44, 55-56 (1987) (holding categorical rule prohibiting all

witness testimony refreshed by hypnosis was arbitrary and violated due process); Washington v. Texas, 388 U.S. 14, 23 (1967) (holding categorical rule prohibiting accomplices testifying on defendants' behalf similarly violated due process). Supreme Court precedent also provides a due process claim may arise when a state court "without justification impose[s] stricter evidentiary standards on a defendant . . . than it does on the prosecution." Gray, 282 F.3d at 644, 646; see e.g., Green v. Georgia, 442 U.S. 95, 97 (1979) (per curiam) (holding the exclusion of exculpatory hearsay evidence in defendant's trial violated due process because the state was permitted to introduce that exact evidence to secure a conviction in a co-defendant's trial).

On the other hand, the Supreme Court also recognizes that "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes v. South Carolina, 547 U.S. 319, 324 (2006). In particular, the Constitution permits rules of evidence that afford courts discretion to exclude certain evidence "if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Id. at 326; see, e.g., Fed. R. Evid. 403. Moreover, the probative value of certain evidence is lessened if it is repetitive or only marginally relevant to issues presented at trial. See id.; Holmes, 547 U.S. at 326.

Here, the trial court's exclusion of witness testimony and video evidence was not contrary to clearly established Supreme Court precedent that prohibits a state court from arbitrarily denying a defendant's constitutional right to present a defense. There is no indication that the trial court categorically or arbitrarily denied the defendant's requested evidence or imposed stricter evidentiary standards on the defendant. Instead the court declined to admit a portion of Petitioner's evidence by weighing its probative value pursuant to California Evidence Code § 352 and in line with the reasoning the Supreme Court outlined in Holmes.

Also, the Court of Appeal did not unreasonably apply clearly established federal law because a reasonable jurist could conclude the trial court did not violate Petitioner's due

process rights or right to present a defense by excluding testimony pertaining to specific details of Petitioner's diagnosis and the jail video. First, the trial court did not exclude all evidence related to Petitioner's unconsciousness defense, but only limited what evidence Petitioner was allowed bring forward pursuant to California Evidence Code § 352. Second, because the testimony and video was duplicative and loosely related to petitioner's defense that he was in fugue state while appearing purposeful in committing the charged crimes, a reasonable jurist could determine that the excluded evidence had low probative value. (See Doc. No. 9-12, Lodgment 5 at 13-14.) Third, a reasonable jurist could conclude, as the California Court of Appeal did, that the video evidence could potentially cause undue confusion or prejudice to the jury because it illustrated Petitioner "in a custodial setting, covered with blood, and disoriented." (Id.)

For the aforementioned reasons, the trial court's exclusion of additional testimony and video evidence supporting Petitioner's unconsciousness defense was not contrary to, or an unreasonable application of, clearly established federal law per 28 U.S.C. § 2254(d)(1). Thus, Petitioner's second claim is denied.

**B.  Claim Three: Jury Instructions on Petitioner's Unconsciousness Defense**

Petitioner next alleges that the trial court erred in instructing the jury regarding Petitioner's unconsciousness defense. (Doc. No. 1 at 70.) Pursuant to CALCRIM No. 3425, the trial court instructed the jury the following:

> The [Prosecution] must prove beyond a reasonable doubt that the defendant was conscious when he acted. If there is proof beyond a reasonable doubt that the defendant acted as if he were conscious, then you should conclude that he was conscious, unless based on all the evidence, you have a reasonable doubt that he was conscious, in which case you must find him not guilty.

(Id.) Petitioner argues that according to this instruction, the prosecution could create a legal presumption the Petitioner was conscious by merely proving beyond a reasonable doubt is that the defendant "acted as if he were conscious." (Id. at 71-72.) Petitioner reasons this presumption lessened the prosecution's burden to prove every element of the

offenses charged against him beyond a reasonable doubt, violating his constitutional rights. (Id.)

The California Supreme Court held a similar jury instruction creating a rebuttable presumption of consciousness did not violate due process because consciousness was not a statutory element of murder. People v. Babbitt, 45 Cal. 3d 660, 692-94 (1988), cert. denied, 488 U.S. 1034 (1989) (relying principally on Patterson v. New York, 432 U.S. 197 (1977)). In California, unconsciousness is formally designated as an affirmative defense, and therefore is not an element. Babbitt, 45 Cal. 3d at 693. This decision falls squarely in line with the United States Supreme Court's decision in Patterson, which held due process requires only that a state prove the formal statutory elements of an offense beyond a reasonable doubt. 432 U.S. at 205-06.

Petitioner proposes a presumption of consciousness is no longer constitutional because Patterson, and thus subsequently Babbitt, were implicitly overruled by the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000) and Alleyne v. United States, 570 U.S. 99 (2013). Apprendi and Alleyne held that any fact that increases the mandatory maximum or minimum sentence of an offense, respectively, must be proved by the prosecution beyond a reasonable doubt. Apprendi, 530 U.S. at 490; Alleyne, 570 U.S. at 103. Petitioner reasons that if the defendant were unconscious, he would be completely exculpated, and therefore his consciousness is a fact that increases his sentence. (Doc. No. 1 at 80.) Thus, Petitioner claims, the trial court's jury instructions were contrary to, or an unreasonable application of, Supreme Court precedent because the prosecution has the burden to prove consciousness beyond a reasonable doubt per Apprendi and Alleyne. (Id. at 81-82.).

This Court is not persuaded. The trial court's presumption of consciousness instruction was not "contrary to" or an "unreasonable application" of "clearly established federal law" because there is a reasonable reading of Apprendi and Alleyne that does not overrule Patterson or Babbitt. Reasonable jurists could find that Babbitt and Patterson survive today because Apprendi and Alleyne's holdings only explicitly apply to sentencing

factors, while conversely, Babbitt and Patterson deal with a legislature's constitutional authority to define criminal offenses. See, e.g., United States v. Snype, 441 F.3d 119, 150 (2nd Cir. 2006) ("Apprendi leaves undisturbed the principle that while the prosecution must prove all the elements of the offense charged beyond a reasonable doubt, the legislation creating the offense can place the burden of proving affirmative defenses on the defendant" (quoting parenthetically United States v. Brown, 276 F.3d 930, 932 (7th Cir. 2002) (internal citations omitted)); State v. Ray, 966 A.2d 148, 161 (Conn. 2009) ("Patterson . . . and Apprendi can be reconciled."). Moreover, even if Patterson and Babbitt were implicitly overruled by Apprendi and Alleyne, the California Court of Appeal's failure to extend this implicit overruling does not warrant granting Petitioner a writ of habeas corpus. See White v. Woodall, 134 S.Ct. 1697, 1706 ("Section 2254(d)(1) . . . does not require state courts to extend [Supreme Court] precedent or license federal courts to treat the failure to do so as error.")

Accordingly, Petitioner's third claim regarding the trial court's error in instructing the jury is denied.

## C. Claim Four: Admission of Evidence Found in Warrantless Search[3]

Petitioner alleges the trial court violated his Fourth Amendment rights by failing to exclude a photo found on Petitioner's cell phone from evidence, (Doc. No. 1 at 86-87,) because it was found in a warrantless search performed by the arresting officer. (Doc. No. 9-12, Lodgment No. 5 at 25.) The photo was taken only two and a half hours before the carjacking and robbery and depicted Petitioner with "a handgun that appeared to be the same handgun that was used in the crime." (Id.)

---

[3] A point of contention between the parties is whether Petitioner exhausted his fourth claim, which alleges the trail court erred in excluding evidence obtained in a warrantless search, because he did not present it to the California Supreme Court on appeal. (See Doc. No. 8-1 at 8.) A petition for a writ of habeas corpus filed by a prisoner in state custody "shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However, this Court exercises its discretion to not address exhaustion because Petitioner's claim fails on the merits. See 28 U.S.C. § 2254(b)(2).

"A state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial" as long as the prisoner was provided a "full and fair" opportunity to litigate the Fourth Amendment claim in state proceedings. Stone v. Powell, 428 U.S. 465, 494 (1976). This "doctrine survive[d] the passage of AEDPA" and is still binding on this Court. Newman v. Wengler, 790 F.3d 876, 881 (9th Cir. 2015). Thus, this Court must determine only whether the state provided Petitioner a full and fair opportunity to bring his Fourth Amendment claim. See Stone, 428 U.S. at 494; Moormann v. Schriro, 426 F.3d 1044, 1053 (9th Cir. 2005); Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir. 1990).

Here, Petitioner litigated his Fourth Amendment claim at trial and before California Court of Appeal. (Doc. No. 9-12, Lodgment No. 5 at 25-31.) Therefore, Petitioner had a full and fair opportunity to litigate the claim in state court. See Moormann, 426 F.3d at 1053; Ortiz-Sandoval, 81 F.3d at 899; Gordon, 895 F.2d at 613-14. Accordingly, Petitioner's fourth claim fails and is denied.

## II. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts provides that the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. foll. § 2254. A certificate of appealability may be issued only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on the merits, a petitioner satisfies the above requirement by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, after reviewing the petition, the Court concludes that jurists of reason would not disagree with the Court's analysis of Petitioner's claims on the merits, and therefore declines to issue a certificate of appealability.

## **Conclusion**

For the foregoing reasons, the Court adopts the Report and Recommendation as supplemented by the reasoning in this Order, overrules Petitioner's objections, and denies the petition. Additionally, the Court declines to issue a certificate of appealability. The Clerk of the Court is directed to enter judgment in favor of Respondent.

**IT IS SO ORDERED.**

DATED: July 16, 2018

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT